UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Sheila D. Hilson,

                          Plaintiff,

          v.

Commissioner of Social Security,[1]

                          Defendant.

**Decision and Order**

17-CV-725 HBS
(Consent)

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 7, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 10, 13.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Supplemental Security Income under Title XVI of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more than a

---

[1] The Clerk of the Court is directed to conform the caption of the case to the caption of this decision.

mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

2

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Here, plaintiff has raised several issues related to the weight that the ALJ accorded to various physician opinions. For example, according to plaintiff, "the ALJ failed to discuss Dr. Matteliano's opinions, much less reconcile it with his RFC—which would allow for full time work at a reduced range of light work (and thus would conflict with Dr. Matteliano's opinion of someone who would not even be independent in terms of activities of daily living)." (Dkt. No. 10-1 at 19.) The clinical notes, however, consistently acknowledge pain but look consistent with the ALJ's determination of light work plus additional restrictions. The clinical examination on January 10, 2012 noted that plaintiff could raise her arms over her head and had a normal gait and stance. [336.] *Cf. Lipp v. Astrue*, No. 10-CV-0398 MAT, 2013 WL 1908036, at *7 (W.D.N.Y. May 7, 2013) (light work RFC consistent with clinical findings). In the same examination, the physician noted that he "can find no clear-cut focal signs on this woman." [336.] Dr. Matteliano's examination of November 19, 2012 noted that plaintiff had no restriction in her shoulders; a neck restriction only 15 degrees more narrow than that in the RFC; an ability to bend forward 60 degrees; and unrestricted hip movement. [371.] *Cf. Heagney-O'Hara v. Comm'r*, No. 14-CV-6083-CJS, 2015 WL 860849, at *6 (W.D.N.Y. Feb. 27, 2015) (light work consistent with physician witness testimony about functional limitations). An "other source" (*see* 20 C.F.R. § 416.913(a)) chiropractic examination of November 8, 2012 revealed similar findings including "no focal motor deficits" in the lower extremities. [377.] An examination from January 17, 2013 noted no significant changes from prior examinations. [385.] An examination from March 19, 2013 noted 40 degrees of lumbar forward flexion. [391.] A consultative medical examination on June 3, 2013 offered a medical source statement of mild exertional limitations based on measurable ranges of motion that might have been affected by incomplete effort. [458.] An independent chiropractic examination on June 6, 2013 showed cervical and lumbar ranges of motion that were diminished but not inconsistent with the RFC

4

determination. [517–18.] *Cf. Baker v. Colvin*, No. 1:16-CV-00093 (MAT), 2017 WL 2119214, at *2 (W.D.N.Y. May 16, 2017) (light work consistent with degree of limitation in the clinical notes). A physical examination on January 8, 2015 showed no significant changes in plaintiff's ranges of motion and "certainly nothing concerning" with respect to disc degeneration. [592.] Consequently, substantial evidence supports the details in the RFC determination. Other physician comments such as "[s]he has a total disability from work" [372, 386] go to the ultimate determination of disability, a matter reserved for the Commissioner. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("Moreover, some kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner. That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative.") (internal quotation marks and citation omitted).

Plaintiff has challenged the ALJ's decision to assign significant weight to the opinion of a consultative psychologist, Dr. Susan Santarpia, Ph.D. Plaintiff is particularly concerned with how Dr. Santarpia addressed her symptoms of depression and anxiety:

> Here, the only medical opinion which was given any significant evidentiary weight was Dr. Santarpia's June 2013 consultative examination. During that examination, Dr. Santarpia noted that Ms. Hilson reportedly claimed she was not experiencing any depression or anxiety. Tr. 456. On mental status examination mood, affect, and thought processes, and thought content were all normal. Tr. 457. Dr. Santarpia opined she could do simple work with mild limitations in dealing with complex tasks. Tr. 458-459. Panic disorder; alcohol dependence; and cannabis dependence were diagnosed. Tr. 459.
>
> The ALJ argued that this opinion was consistent with the record, particularly Ms. Hilson's treatment notes. However, this conclusion is simply not supported by substantial evidence. Unlike at Dr. Santarpia's examination, However, [sic] in light of Ms. Hilson's treatment notes, this factual determination was not supported by substantial evidence.

(Dkt. No. 10-1 at 23.) The Court disagrees with two aspects of plaintiff's argument. Dr. Santarpia

did not make a finding that plaintiff had no depression or anxiety; she simply wrote down "none reported" to indicate that plaintiff herself did not report any on June 3, 2013. [460.] Plaintiff did report sleep disruption and panic attacks, and Dr. Santarpia made notes to that effect. [460–61.] Apart from plaintiff's self-reporting, Dr. Santarpia conducted her own mental status examination and found poor insight, poor judgment, low-average cognitive functioning, and mild impairments in attention and concentration due to limited education. [462.] To the extent that Dr. Santarpia's findings are inconsistent with other mental health notes, her findings are actually more favorable to plaintiff than the notes that consistently documented good insight and good judgment. [*E.g.*, 462, 623.] The ALJ had discretion to resolve any inconsistencies in favor of Dr. Santarpia.

Plaintiff also has challenged the RFC determination on the basis that it fails to acknowledge her inability to bend. According to plaintiff, "[t]he ALJ assigned partial weight to D.C. Pignatora III's opinion, and stated that it was generally consistent with the record. Tr. 23. Yet, D.C. Pignatora III specifically opined that Ms. Hilson could not bend. Tr. 516. The ALJ's RFC includes no limitation with regards to bending. *See* Tr. 18." (Dkt. No. 10-1 at 21.) This challenge falls short for several reasons. The explicit limitation on bending appears only as "no bending" in a report that includes measurable ranges of motion and that recommends an ability to work in a limited capacity. [516–20.] Other clinical notes can be interpreted in two different ways that support the Commissioner's final determination: The other clinical notes either do not contain the same explicit restriction or indirectly address bending as the ALJ did. [334, 371, 458.] *Cf. Penfield v. Colvin*, 563 Fed. App'x 839, 840 (2d Cir. 2014) (summary order) (Commissioner affirmed where limitations in clinical notes were consistent with the level of exertion in the RFC determination). The ALJ's RFC determination was for light work with additional restrictions on activities that would involve bending. The jobs that the ALJ found plaintiff capable of performing, unskilled assembler and

6

ticket taker, do not appear to require bending as part of the jobs themselves. *Cf. Besser v. Berryhill*, No. 3:16-CV-850 (DJS), 2017 WL 2869931, at *6 (N.D.N.Y. July 5, 2017) (Commissioner affirmed where RFC contained limitations consistent with clinical notes about gait, balance, and coordination); *Cramer v. Berryhill*, No. 15-CV-769-RJA-MJR, 2017 WL 9516814, at *7 (W.D.N.Y. May 26, 2017) ("The ALJ's discussion of Dr. Vigna's treatment notes leaves the Court satisfied that the ALJ gave due consideration to Dr. Vigna's opinion, but ultimately found it to be less persuasive than other evidence in the record."), *report and recommendation adopted*, No. 1:15-CV-00769 (MAT), 2017 WL 4784318 (W.D.N.Y. Oct. 24, 2017) (citations omitted); *Larkin v. Astrue*, No. 3:12-CV-35 MPS, 2013 WL 4647229, at *4 (D. Conn. Aug. 29, 2013) ("Perhaps more importantly, the ALJ's RFC assessment already includes restrictions that would accommodate back and knee impairments, and there is no reason to believe that a remand to the ALJ to consider knee and back pain in more detail would result in any further restrictions, especially given the ALJ's decision to rely on Dr. Kogan's report.").

### III. CONCLUSION

The Commissioner's final determination was supported by substantial evidence. For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 13) and denies plaintiff's cross-motion (Dkt. No. 10).

The Clerk of the Court is directed to close the case.

SO ORDERED.

                                        */s Hugh B. Scott*
                                        Hon. Hugh B. Scott
                                        United States Magistrate Judge

DATED: May 30, 2019